(No. 71174

*In re* JOHN A. DOYLE *et al.*, Attorneys, Respondents.

*Opinion filed October 17, 1991.*

Deborah M. Kennedy, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Walter P. Dahl, of James E. Dahl & Associates, of Chicago, for respondent John A. Doyle.

Sidney Z. Karasik, Paul Karasik, George B. Collins, Lori Klingman and Theresa M. Gronkiewicz, of Chicago, for respondent Gabriel A. Kostecki.

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint alleging, *inter alia*, that respondents, John A. Doyle (Doyle) and

Gabriel A. Kostecki (Kostecki), collected an excessive fee in violation of the Code of Professional Responsibility (the Code) (87 Ill. 2d R. 2–106(a)) in their handling of a life insurance matter for Alojza Janus, the complainant herein. A panel of the Hearing Board found Kostecki had committed prejudicial[n] acts against the interests of his client and recommended that he be censured. The panel further recommended that the charges against Doyle be discharged. The Review Board concurred with the Hearing Board's findings of fact and conclusions of law. However, the Review Board recommended that the charges against each of the respondents be dismissed and that Kostecki not be censured for his prelitigation conduct because such conduct was not alleged in the Administrator's complaint. The Administrator filed exceptions to the report and recommendation of the Review Board (134 Ill. 2d R. 753 (e)(6)).

The issues presented for review are whether: (1) respondents' collection of one-third of the complainant's life insurance proceeds constituted an excessive fee; (2) Doyle's motion for a directed finding was properly granted by the Hearing Board; and (3) Kostecki can be disciplined for his prelitigation conduct.

The relevant facts are as follows. Kostecki was admitted to the Illinois bar in 1966 and thereafter maintained a storefront, neighborhood law office on the northwest side of Chicago. His ability to speak both English and Polish enabled him to represent many working-class Polish people, some of whom spoke little or no English. Joseph Janus, who immigrated to the United States from Poland, sought Kostecki's legal advice as a consequence of the tragic deaths of his two brothers, Adam and Stanley, and Stanley's wife, Theresa.

Three members of the Janus family were victims of the infamous "tainted Tylenol" episode in 1982. During the evening of September 29, 1982, Stanley and

Theresa, while at Adam's home, were mourning Adam's death when they both unknowingly ingested cyanide-laced Tylenol capsules from the same container that Adam previously had taken capsules. Stanley and Theresa became very ill and both were transported by ambulance to a hospital. Stanley was pronounced dead at 8:15 p.m., on September 29, 1982. Theresa, however, was put on a medical respirator while in a deep coma, and was not pronounced dead until 1:15 p.m., on October 1, 1982. The question of whether Theresa survived Stanley was the subject of a lawsuit. See *Janus v. Tarasewicz* (1985), 135 Ill. App. 3d 936 (appellate court affirmed trial court finding that Theresa survived her husband Stanley).

At the time of Stanley's and Theresa's deaths, two $100,000 life insurance policies were in effect, one issued by the Reserve Life Insurance Company (Reserve) and the other issued by the Metropolitan Life Insurance Company (Metropolitan). On each of these two policies, Theresa was the primary beneficiary and Stanley's mother, the complainant, was the contingent beneficiary. However, only the Reserve policy contained a 15-day clause which provided in part: "If any beneficiary dies at the same time as the insured, or within 15 days after the insured *** the life insurance proceeds will be paid as though that beneficiary died before the insured." Therefore, given the 15-day clause in the Reserve policy and the fact that Theresa did not survive Stanley beyond 15 days, the proceeds of the Reserve policy would normally be paid to the complainant.

Before a panel of the Hearing Board, Joseph Janus testified as follows: prior to his brother Stanley's death, Joseph and Stanley had been partners in the automotive parts business; in October of 1982, about a day or so after Stanley's funeral, he gathered some partnership and insurance papers (including the Reserve and

Metropolitan policies) from a locker at their auto parts store and visited Kostecki's law office; at this meeting, he instructed Kostecki to look over these papers and correspond with the Tarasewiczes (the administrator of Theresa's estate) and explore the possibility of settling Stanley and Theresa's affairs in a fifty-fifty manner; Kostecki glanced at the documents and returned one of them to Joseph with instructions that Joseph cash in the policy; he left Kostecki's office and over the next two months or so, he periodically inquired about the status of the papers that were left behind.

He also testified that, on December 23, 1982, a second meeting was arranged at Kostecki's office where he and other members of his family signed the following contingent-fee agreement:

> "We, the undersigned, as heirs and/or beneficiaries of STANLEY JANUS, Deceased, do hereby retain and employ GABRIEL A. KOSTECKI and DOYLE & RYAN, LTD. to represent us in the presentation of claims against the Estate of Teresa [sic] Janus (who had been married to Stanley Janus) and any insurance companies involved and in the handling of the Estate of Stanley Janus, Deceased, and in consideration of their services, in addition to the payment of any fees normally associated in the handling of said Estate, agree to pay said attorneys for their services one-third (1/3) of the value of any asset, as well as *one-third (1/3) of any* amount entering the Estate of Stanley Janus or received by any of us individually from said Estate or as beneficiaries of, or from any insurance proceeds on the life of Stanley Janus including but without limitation proceeds of Metropolitan Life Insurance Company Policy No. 822—902—081—A and *proceeds of Reserve Life Insurance Company Policy No. 010587916S.* The above fee arrangement covers all services through the trial court level. Appeals, which are rare, are not included in the above fee arrangement. Clients also are responsible for the reim-

bursement of expenses incurred in the handling of the above." (Emphasis added.)

The gravamen of the Administrator's complaint concerns the reasonableness of the one-third contingent fee charged against the proceeds of the Reserve policy.

Kostecki also testified before the hearing panel and his testimony was generally as follows: Joseph Janus called his office and informed him of Stanley Janus' death; shortly after Stanley's funeral, Joseph visited Kostecki's law office and brought certain insurance papers—a Metropolitan life insurance policy, a Reserve life insurance policy, a New York Life insurance policy, an Aetna insurance policy, and a business insurance policy; Joseph asked him to review the policies and determine who would recover the proceeds under the respective policies; he read the policies and discovered that the New York Life policy had lapsed; he returned the business insurance policy to Joseph and advised him to cash it in; he considered the timing of Stanley's and Theresa's deaths to be determinative as to who would recover the death benefit under the Metropolitan policy; and that after examining the Reserve policy and its 15-day clause, he determined that the proceeds under this policy would be payable to the complainant.

Although he was in receipt of the above policies, Kostecki admitted to informing an attorney from the law firm representing Theresa's estate, Renn & High, that he did not possess any insurance policies. He claimed that Joseph Janus instructed him to give this false information. Kostecki's communications with the firm of Renn & High are the subject of the prelitigation activities referred to by the Hearing and Review Boards.

As to the Reserve policy in particular, Kostecki testified as follows: he tried to reach Mr. Abe I. Nubani of Reserve on several occasions for the purpose of obtain-

ing the necessary claim forms so that a claim could be filed on behalf of the complainant; he eventually reached Nubani, but a follow-up call to Nubani was necessary because several days had passed and he had yet to receive the forms; it was during this follow-up call to Nubani in mid-December of 1982 that Kostecki allegedly learned that an investigation was in progress about a possible murder or suicide associated with the deaths of Theresa and Stanley; it was about this time that he also learned that Metropolitan was going to pay the proceeds of its policy to the Tarasewicz family; and therefore, he grew concerned about the possibility of the Tarasewiczes making a claim on the Reserve policy.

Because he felt that the Reserve and Metropolitan claims may be litigated, Kostecki contacted Joseph Janus and advised him that he wished to bring another attorney, Doyle, into the case. On December 18, 1982, the complainant and her husband, Tadeusz Janus, came to Kostecki's office. At this meeting Kostecki explained the two different ways in which he could be compensated: an hourly rate plus a $5,000 retainer or a one-third contingent fee. They agreed to the contingent-fee arrangement and he then contacted Doyle to prepare the fee contract. He picked up the contract at Doyle's office and the complainant signed the agreement (quoted earlier) on December 23, 1982.

After the contingent-fee agreement was signed, Kostecki received the claim forms from Reserve and the death certificates of Stanley and Theresa, and he forwarded these documents to Doyle. Doyle completed the claim form and returned it to Kostecki for the purpose of obtaining the complainant's signature. In February of 1983, Reserve paid the death benefit to the complainant. Kostecki received $17,000, which represented one half of the $34,000 contingent fee taken from the Reserve proceeds.

Kostecki further testified that he performed the following services in relation to the contingent-fee contract as a whole: he met with Joseph Janus on several occasions; he obtained Joseph's partnership agreement; he checked his files on an assumed name matter; he checked the recorder of deeds office in Cook County because Joseph and Stanley purchased a building; he met with Chester Rawski on numerous occasions because he had represented Joseph on a variety of matters; he phoned the medical examiner's office about 15 or 20 times in an effort to obtain death certificates on Stanley and Theresa; he phoned Reserve in order to obtain a claim form; he performed about 25 hours of legal research on the subject of simultaneous death; he spent approximately 15 to 20 hours in consultation with his brother, a pharmacist, and a sister-in-law, a registered nurse; he had further consultations with Dr. Stanley Forest and Nancy Bisco, chief of the laboratory at the University of Illinois Hospital; he spoke with Dr. Thomas S. Kim, who desired to write an article regarding the medical events surrounding Stanley and Theresa's deaths; he opened up Stanley Janus' estate, making several trips to Du Page County; he made two court appearances prior to the actual trial of the Metropolitan claim; he prepared for the depositions of Drs. Biela and Hanley and he tried to reach another doctor, Dr. Cascino; he dealt with a summary judgment motion; he made two court appearances in connection with the Metropolitan claim; he prepared and participated in a week-long trial over the Metropolitan claim; and he obtained a stay order on the probate matter after the trial court ruled that Theresa survived Stanley.

Doyle gave the following testimony before a panel of the Hearing Board: he was admitted to the Illinois bar in 1950 and his practice consisted primarily of personal injury and related insurance matters; he did not know

Kostecki very well since he knew him only from one professional matter and a couple of social meetings; in December of 1982, Kostecki contacted him and informed him of certain insurance matters arising out of the Tylenol deaths; Kostecki explained the facts surrounding the deaths and that a question existed as to whether Theresa survived Stanley Janus; Kostecki also informed him that the Tarasewicz family claimed the proceeds of both the Metropolitan and Reserve insurance policies and that Reserve was investigating the possibility of a murder or suicide; he accepted Kostecki's statements as true without making any independent inquiry of the facts surrounding the insurance matters; it was his understanding that he would handle the insurance claims and any litigation stemming from the Metropolitan and Reserve policies; and he prepared the contingent-fee agreement (quoted earlier in this opinion) after Kostecki advised him that the Janus family agreed to such a fee.

Thereafter Doyle obtained a proof-of-death claim form, completed it, obtained complainant's signature through Kostecki, and submitted the claim to Reserve on or about January 6, 1983. Approximately one month later, a draft dated February 1, 1983, was issued by Reserve in the amount of $102,038.36. A letter signed by Doyle and Kostecki was then given to the complainant. The letter, dated February 11, 1983, read as follows:

"As you know, we have received a check from Reserve Life Insurance Company in the sum of $102,038.36. On this amount, Mr. Kostecki and I, pursuant to our agreement, are entitled to fees of one-third which amounts to $34,000.00. We are presently supplying you with a post-dated check to allow the clearing of the Reserve check through our Trust Account.

Inasmuch as the Estate of Theresa Janus might make a claim against these proceeds, both Mr. Kostecki and I wish to assure you that in the event that such a

claim was successful, Mr. Kostecki and our firm [Doyle & Ryan, Ltd.] will, to the extent of 50 per cent each, reimburse you the $34,000.00 presently being retained by us as fees."

Jean Saunders, a former claims examiner with Reserve, also testified before the Hearing Board and her testimony was as follows: she received the claim related to the death of Stanley Janus; she reviewed the policy and determined that if the primary beneficiary died at the same time or within 15 days of the insured, the contingent beneficiary received the policy proceeds; she reviewed the death certificates and determined that the 15-day clause would take effect because the primary beneficiary died within 15 days of the insured; because Stanley and Theresa did not die from natural causes, she contacted the Chicago police department and the Tylenol Task Force, but was given no information as to a possible murder or suicide; and it was her opinion that the proceeds should be paid to the complainant.

Jerry Jenkins, Saunders' former claims supervisor at Reserve, testified before the Hearing Board as follows: in order for a claim to be paid, the company needed three items—the insurance policy, the appropriate claim forms, and the death certificates; if an accidental bodily injury was involved, as in the Janus case, it was standard procedure to contact the local police department in order to rule out a suicide or murder; he approved the payment of the claim to the complainant because it was relatively clear to him that as the contingent beneficiary, she should receive the policy proceeds; and his opinion was based on the fact that the policy contained a provision that if the primary beneficiary died within 15 days of the date of insured's death, the proceeds would be payable to the contingent beneficiary.

A number of character witnesses testified on behalf of respondents. Robert Chapman Buckley, Illinois appel-

late court justice, described Doyle as a man of unimpeachable integrity. Miriam Harrison, associate judge for the Cook County circuit court, considered Doyle's reputation in the community to be outstanding. Joseph Baron, who practiced law for over 50 years, considered Kostecki to be a very industrious and hard-working lawyer. Andre Vrtjak, assistant Attorney General with the Illinois Tollway, considered Kostecki to be a very able attorney whose reputation was above reproach.

At the conclusion of the Administrator's case, each respondent filed a motion for a directed finding. A panel of the Hearing Board allowed Doyle's motion but denied Kostecki's. The hearing panel later recommended that Kostecki be censured for his prelitigation conduct wherein he gave false statements in response to inquiries made by Tarasewicz's lawyers, Renn & High. The Review Board recommended that the charges against each of the respondents be dismissed, and that Kostecki not be disciplined for his prelitigation conduct. In its report, the Review Board stated that "the Administrator's Complaint in no manner informed Kostecki that his pre-litigation conduct was at issue or that he should explain or defend that conduct. Consequently, Kostecki cannot be said to have had any real opportunity to defend against the alleged violation found by the Hearing Board."

The Administrator first contends that respondents' collection of one-third of the Reserve policy proceeds constituted an excessive fee in violation of Disciplinary Rule 2—106 of the Code (87 Ill. 2d R. 2—106(a)). The Review Board affirmed the Hearing Board's finding as to the fee, stating: (1) "the fee that MR. DOYLE received was [not] excessive or overreaching in light of the work he was required to perform and the expertise he brought to the case"; and (2) "MR. KOSTECKI certainly earned the fees that he ultimately received be-

cause of the substantial amount of work that had to be performed before all of this litigation was resolved ***." This court, in reviewing an attorney's conduct through a record of a disciplinary proceeding, will generally defer to the Hearing Board's findings of fact unless the board's findings are not supported by clear and convincing evidence. *In re Gerard* (1989), 132 Ill. 2d 507, 520; *In re Harth* (1988), 125 Ill. 2d 281, 287.

The reasonableness of contingent-fee contracts are subject to the scrutiny of the courts. (*In re Teichner* (1984), 104 Ill. 2d 150, 161, citing *Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 83.) While a contingent-fee contract may be valid at the time of its formation, this court still has a duty to safeguard the public from the *collection* of an excessive fee. (*Teichner*, 104 Ill. 2d at 160.) Paragraph (a) of Rule 2—106 explicitly provides that "[a] lawyer shall not enter into an agreement for, charge, or *collect* an *** excessive fee." (Emphasis added.) 87 Ill. 2d R. 2—106(a).

Under Rule 2—106(b), "[a] fee is excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." (87 Ill. 2d R. 2—106(b).) Whether a fee is excessive is determined after consideration of the factors enumerated in Rule 2—106(b):

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment would preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." 87 Ill. 2d Rules 2—106(b)(1) through (b)(8).

In *Gerard*, 132 Ill. 2d 507, this court discussed the appropriate circumstances under which an attorney could collect a contingent fee. In that case, the court stated that "a contingent fee is to be collected *only* if an attorney successfully champions the legal rights and claims of his client, with the result that the client is compensated through a *settlement with*, or *judgment against*, those who denied his claims." (Emphasis added.) *Gerard*, 132 Ill. 2d at 522.

While the events in the instant case occurred well before the *Gerard* opinion was filed, *Gerard* was grounded upon the plain language of Rule 2—106(c)(1), a rule which was in effect at the time respondents collected their contingent fee. Rule 2—106(c)(1) provides that a contingent-fee agreement is an "agreement for the provision of legal services by a lawyer under which the amount of the lawyer's compensation is contingent in whole or in part upon the successful accomplishment (*by settlement or litigation*) of the subject matter of the agreement \*\*\*." (Emphasis added.) (87 Ill. 2d R. 2—106(c)(1).) The fact that respondents charged a contingent fee on the Reserve policy is relevant because it is one of the eight factors to be considered in deciding whether the fee was in excess of a reasonable fee.

In *Teichner*, 104 Ill. 2d 150, the court considered whether the collection of a contingent fee from the proceeds of a life insurance policy was excessive. In *Teichner*, a woman filed a claim to obtain payment under her paramour's life insurance policy. Although she was the named beneficiary on the policy, she was concerned

over her right to the proceeds because she never formally married the insured and she feared the insured's wife would file a competing claim. Therefore, she consulted a lawyer for advice.

A lawyer agreed to represent her on the life insurance claim and a contingent-fee agreement was executed wherein the lawyer would receive one-fourth of the amount recovered by settlement or judgment. Less than one month after the claim was submitted, the insurance company paid the life insurance benefit of $27,598.71 to the paramour. In accordance with the contingent-fee agreement, the lawyer received one-fourth of the proceeds, or approximately $7,000. In one of the counts of a two-count complaint, the Administrator charged the lawyer with receiving an excessive fee. A panel of the Hearing Board found, and the Review Board agreed, that the contingent fee was unconscionable.

On appeal, the lawyer alleged that the Administrator did not prove by clear and convincing evidence that the fee was excessive. Although no records were kept, the lawyer claimed that a clerical employee researched the subjects of common law marriage, bigamy and insurance. Moreover, he testified that he contacted the insurance company by phone a number of times in order to facilitate prompt payment of the claim. However, the claim was not disputed and it was paid in a routine manner in the normal course of business. After considering the factors listed in Rule 2—106, the court in *Teichner* concluded "that a lawyer of ordinary prudence would be left with a definite and firm conviction that a fee of approximately $7,000 in connection with the insurance proceeds in the circumstances of this case was not only in excess of a reasonable fee, but was unconscionable ***." *Teichner*, 104 Ill. 2d at 163.

The circumstances in *Teichner* are somewhat similar to the circumstances presented here. The Reserve claim was paid in a routine manner within one month after it was submitted for payment. A dispute did not develop over the complainant's right to the proceeds of the policy. Respondents admitted that, given the plain language of the policy and the fact there was no question that Theresa did not survive Stanley by more than 15 days, the life insurance proceeds were clearly payable to the complainant as the contingent beneficiary.

Respondents argue that the claim was not routine because Kostecki learned from Nubani, a sales agent with Reserve, that an investigation was underway regarding a possible murder or suicide in connection with the deaths of Stanley or Theresa. However, Nubani testified that he did not recall mentioning the words "murder or suicide" in his conversation with Kostecki. Furthermore, Nubani testified that he told Kostecki "that as far as payment of the claim, I don't handle claims. Of course, our home office and the Claim Department handles all the claims pertaining to any death on any insurance policy."

Moreover, Jean Saunders, the employee who had processed the claim, testified that had an agent such as Nubani contacted their office, this type of communication would generally be noted in the file. But, the file contained no such notation. The Reserve employee who approved the payment of claims, Jerry Jenkins, testified that under the circumstances, it was "pretty clear and pretty easy" to determine that the complainant was entitled to the proceeds. Jenkins also testified that three levels of upper management never expressed any concern about the validity of complainant's right to the Reserve proceeds.

Respondents may have initially had a good-faith belief that their client's claim would be disputed. But, at

the time respondents took their fee, they were aware of the 15-day clause; they both knew that Theresa did not survive Stanley by more than 15 days; and the insurance company paid the claim in an expeditious manner. This set of circumstances should have demonstrated to the respondents that their client's claim on the Reserve proceeds was uncontested. See, *e.g., Gerard*, 132 Ill. 2d at 524 (attorney collected an excessive fee under contingent-fee agreement where he did not "recover" certificates of deposit as originally anticipated, but simply performed nonlegal services of identifying the certificates and having them registered).

Nevertheless, respondents point out that at the time the claim was paid, the murder and suicide issues were unresolved and the claim could have been contested at a later date. If we were to follow respondents theory, any speculation of a *future* challenge to a legal matter, regardless of how well grounded in fact, would allow members of the bar to take most cases on a contingent-fee basis. This line of reasoning simply does not comport with the plain language of the Code, which states that a contingent fee is to be derived from a settlement or litigated matter (87 Ill. 2d R. 2—106(c)(1)) and the reasonableness of a fee is judged after considering eight different factors (87 Ill. 2d R. 2—106(b)).

The fee here was taken from a check issued by an insurance company after the company received a completed claim form on a life insurance policy. Respondents did not litigate the Reserve claim, nor did they reach a settlement with Reserve because "a settlement normally presupposes a dispute or disagreement." *Teichner*, 104 Ill. 2d at 160.

Respondents contend that *Teichner* is distinguishable from the case at bar in that the contingent-fee contract in *Teichner* involved a single obligation on the part of the attorney. Whereas, under the contingent-fee con-

tract here, respondents were obligated to perform many services, including an estate matter and a trial on the Metropolitan policy. Respondents maintain, and the Hearing Board agreed, that the reasonableness of the $34,000 fee should be judged in light of all the services rendered on behalf of the complainant, rather than simply those services performed with respect to the Reserve Policy. Whether the $34,000 fee was in exchange for services other than those on the Reserve policy requires this court to review the contingent-fee contract.

The objective to be reached "in construing a contract is to give effect to the intention of the parties involved." (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364.) Provided no ambiguity exists within the contract, the intentions of the parties, at the time the contract was formed, must be ascertained from the language of the contract. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293.) The object of our inquiry here is to determine whether the parties intended that the contingent fee taken from the Reserve proceeds was in exchange for services beyond those rendered on the Reserve policy.

The contingent-fee contract provides that "[t]he *** fee arrangement cover[ed] *all services* through the trial court level." (Emphasis added.) Thus, the contract is clear that the one-third fee assessed on the Reserve proceeds, as well as the other contingent fees charged under the contract, were in exchange for all of the services rendered by the respondents, up to, and including, the services rendered through the trial court level.

The record shows that each of the respondents rendered significant legal services on behalf of the complainant and the other parties to the contingent-fee agreement. Kostecki investigated into some partnership and real estate matters in which Joseph and Stanley Janus had participated. Kostecki read four insurance

policies to see if his client had a claim to the proceeds on any of the policies. He returned the business insurance policy to Joseph Janus and instructed him to obtain the benefit payable under that policy. He discovered that one of the policies had lapsed and that the proceeds on that policy would not be recoverable. Kostecki made many phone calls to the medical examiner's office in an attempt to procure the death certificates of Stanley and Theresa. These certificates were required by Reserve to be submitted along with other items so that the claim could be paid. Doyle read the claim form and submitted it to Reserve. In light of the circumstances surrounding Stanley and Theresa's deaths, Kostecki researched the subject of simultaneous death and also consulted a pharmacist, a registered nurse, a hospital department head, and an emergency room physician on this subject. Doyle and Kostecki participated in a week-long bench trial on the Metropolitan policy. The report of the Hearing Board noted that "[i]t was clear to the panel *** that there was indeed a substantial amount of legal effort that must have taken place in preparation for trial." Moreover, Kostecki opened an estate for Stanley Janus. Given the nature and extent of the legal services provided, and after considering the guidelines listed in Rule 2—106(b), we find that a lawyer of ordinary prudence would not have definitely and firmly believed that a $34,000 fee was in excess of a reasonable fee.

The second issue presented for review is whether the Hearing Board erred in allowing Doyle's motion for a directed finding. Citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, the Administrator contends that the motion should have been denied when the evidence presented is viewed in the light most favorable to the opposing party. Doyle claims that section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat.

1987, ch. 110, par. 2—1110) is applicable under the circumstances here and that the board's ruling was correct.

The Administrator presented evidence before a panel of the Hearing Board, not a jury. Therefore, the hearing panel should not view the evidence under the *Pedrick* standard. (See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.) Instead, section 2—1110 of the Code of Civil Procedure is controlling and it provides, in part:

> "Motion in non-jury case to find for defendant at close of plaintiff's evidence. In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered." Ill. Rev. Stat. 1987, ch. 110, par. 2—1110.

The Hearing Board's decision to allow Doyle's motion for directed finding should not be reversed by this court unless it is contrary to the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154.) For the reasons set forth earlier in this opinion, we find the Hearing Board's decision was not contrary to the manifest weight of the evidence.

The third issue for review is whether Kostecki can be disciplined for his prelitigation activities. In its decision, the Hearing Board recommended that Kostecki be censured because "his conduct prior to litigation was suspect and in fact unethical. Had MR. KOSTECKI talked frankly and candidly to the law firm of RENN & HIGH about the status of the case and not given false or misleading answers to their inquiries litigation would have been avoided." The Review Board disagreed with the recommendation of the Hearing Board on the basis

that the Administrator's complaint did not inform Kostecki that his prelitigation activities were at issue. Therefore, any attempt to discipline him for such activities would have been violative of his due process rights.

Under Supreme Court Rule 753(b), a complaint filed with the Hearing Board "shall reasonably inform the attorney of the acts of misconduct he is alleged to have committed." (107 Ill. 2d R. 753(b).) In *In re Beatty* (1987), 118 Ill. 2d 489, 499, it was explained that a "complaint must contain factual allegations of every fact which must be proved in order for the plaintiff to be entitled to judgment on the complaint, and a judgment cannot be rendered on facts demonstrated by evidence at trial unless those facts shown were alleged in the complaint."

Both the Hearing and Review Boards found, as does this court, that the Administrator's complaint did not contain any factual allegations that Kostecki's prelitigation activities constituted misconduct. Consequently, we agree with the Review Board's recommendation that Kostecki cannot be disciplined for misconduct not alleged in the complaint.

For the foregoing reasons, each of the respondents are discharged.

*Respondents discharged.*