John SINGLEY, Plaintiff,

v.

**ILLINOIS & MIDLAND RAILROAD INC., Chicago & Illinois Midland Railway Co., and Genesee and Wyoming, Inc., Defendants.**

No. 98–3028.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 19, 1998.

Howard W. Feldman, Springfield, IL, for plaintiff.

Dean W. Jackson, Springfield, IL, A. Paul Britton, Rochester, NY, for defendants.

## *OPINION*

RICHARD MILLS, District Judge.

[E]x-employee.

[R]eleased all claims against employer.

[I]nterpretation of the separation contract.

[S]uit for retaliatory discharge?

[A]llowed.

Since the disposition of the pending motions depend on one issue, the Court will address them in this comprehensive Order.

## I. BACKGROUND

Singley filed this suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and 29 U.S.C. § 1132(e), alleging that he was wrongfully discharged from his job for exercising rights under his retirement benefits plan.

He was initially employed by Chicago & Illinois Midland Railway Company ("C & IM") on April 4, 1972. Singley was continuously employed by C & IM until February 9, 1996, as an assistant superintendent/trainmaster and special agent for the company. After a change in ownership on February 9, 1996, C & IM changed its name to Illinois & Midland Railroad, Inc., which is a subsidiary of Genesee and Wyoming, Inc. Despite the change in ownership, Singley continued to serve the new company ("Railroad") in the same capacity.

On September 25, 1996, Singley filed a claim related to the Chicago & Illinois Midland Railroad's 401(k) plan. On September 15, 1997, the president and general manager of Illinois & Midland Railroad met with Singley and advised them that his position was going to be eliminated, and offered to put him in another position. Singley declined the offer. The parties then negotiated a separation agreement ("Agreement") and executed the Agreement on October 21, 1997.

In the Agreement, Singley received $111,-600.00, earned vacation pay of $7,303.46, a letter of reference, and participation in the company's 401(k) plan. In exchange, Singley relinquished all his rights and privileges as an employee of the company. Included in paragraph 8 of the Agreement was the following clause:

> By entering into this Agreement, Employee accepts the payments and benefits provided by it full and complete satisfaction of and hereby agrees to release and waive all claims, and never to commence, prosecute or cause to permit, advise, assist to be commenced or prosecuted any lawsuits, actions, charges or proceedings of any kind upon any claims, demands, causes or [sic] action, obligations, damages, or liabilities against the Company, and/or its pre-

decessors (including the Chicago & Illinois Midland Railway Company), successors, related entities, officers, directors, shareholders, agents, attorneys, employees, assigns, heirs, executors and/or administrators related to the Company's employment of the Employee and/or termination of the Employee from the employment with the Company, from the beginning of Employee's employment to and including the date of this Agreement. The Employee expressly states that he understands and agrees that he is waiving any rights he may have or now has to pursue any and all remedies available to him, including, without limitation, any and all claims of age discrimination under the Age Discrimination in Employment Act, employment discrimination under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Illinois Human Rights Act, the Americans with Disabilities Act, as well as *any and all claims under laws relating to employment or employment rights, including those relating to his employment by the Company, separation from employment with the Company,* any representations or commitments made by the Company regarding future employment, benefits payable by the Company, and any and all claims relating to employment discrimination, and, including but not limited to, any and all claims under State contract or tort law, such as claims of wrongful discharge, negligent or intentional affliction of emotional distress and defamation, and any claims for attorneys' fees that exist or may exist as of the date of the signing of this Agreement. The Employee affirms that he has no claims under the Federal Employers' Liability Act (FELA) for on-the-job injury or occupational disease. *This Agreement and/or Release does not restrict any rights or privileges the Employee is entitled to by virtue of the Company's 401(k) plan and the Employee Retirement Income Security Act.* Nothing herein shall prevent Employee from enforcing the provision of this agreement [emphasis added].

Further, in paragraph 9 of the Agreement, Singley specifically waives his claim for benefits that he filed on September 25, 1996. The

Agreement was signed by both parties on October 21, 1997.

On February 9, 1998, Singley filed this complaint alleging that he was fired from his position in retaliation for filing the claim for benefits on September 25, 1996, in violation of 29 U.S.C. § 1140 of ERISA.[1] Based on paragraph 8 and 14 of the Agreement, the Railroad raised affirmative defenses of release, waiver, and accord and satisfaction in its answer. Moreover, the Railroad filed a Cross–Motion for Summary Judgment on its affirmative defenses. To support its Motion, the Railroad filed affidavits of Paul W. Holloway, general counsel of Illinois & Midland, and Spencer D. White, its President. The Railroad also counterclaimed for breach of contract. In response, Singley has moved to dismiss the counterclaim, and to strike both affidavits.

## II. ANALYSIS

Although there are several different defenses, motions and responses, they all hinge on one determinative issue: whether the Agreement signed by the parties on October 21, 1997 bars the Plaintiff from bringing this suit. Specifically, whether the penultimate sentence in paragraph 8 of the Agreement provides an exception to the waiver for suits brought under ERISA.

A. Defendant's Motion for Summary Judgment on the Affirmative Defenses,[2] and Plaintiff's Motion to Strike Affidavits.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Ruiz–Rivera v. Moyer, 70 F.3d 498, 500–01 (7th Cir.1995).

The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Interpreting the terms of a contract is generally a question of law for the court. See Quake Constr. v. American Airlines, 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990, 994 (Ill.1990);[3] Murphy v. Keystone Steel & Wire Co., 61 F.3d 560 (7th Cir.1995) (holding that under Illinois law, interpreting the meaning of a contract is a question of law determined by the court). In determining the meaning of words in a contract, the Court must look first to the plain wording in the contract to determine if the language is ambiguous. See Quake Constr., 152 Ill.Dec. 308, 565 N.E.2d at 994 (a court "must initially determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent") (citation omitted). A contract is considered ambiguous if it can be considered in more than one sense. See Farm Credit Bank of St. Louis v. Whitlock, 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664, 667 (Ill. 1991).

It is clear that notwithstanding the penultimate sentence in paragraph 8, Plaintiff has waived and released all causes of action that he may have had relating to the termination of employment.[4] The addition of the penultimate sentence, however, narrows the general waiver. The controverted sentence states that: "[t]his Agreement and/or Release does not restrict any rights or privi-

1. ERISA prohibits employers from interfering with the protected rights of the employee by making it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against" the employee for exercising their rights protected under ERISA. See 29 U.S.C. § 1140.

2. The Court rules on the summary judgment motion first because it is the most comprehensive of all the motions.

3. The parties agreed that Illinois law would apply when interpreting the Agreement.

4. The Court is aware that Plaintiff signed a clause purporting to be an accord and satisfaction in paragraph 14 of the Agreement. This paragraph, however, excludes rights provided in another paragraph of the Agreement. Thus, this clause is not dispositive in this case.

leges the Employee is entitled to by virtue of the Company's 401(k) plan and the Employee Retirement Income Security Act." Thus, the pivotal question in this case is whether the right to sue for retaliatory discharge under ERISA is excepted from the waiver for all claims related to "termination of employment," or whether the right to sue was preserved as one of the "rights or privileges the Employee is entitled to by virtue of the Company's 401(k) plan and the Employee Retirement Income Security Act."

Both parties argue that the plain meaning of the Agreement favors their side. However, after reading paragraph 8 and the Agreement in its entirety, and without the aid of extrinsic evidence, the Court finds the penultimate sentence unambiguous in favor of the Plaintiff. The plain meaning of the sentence dictates that the waiver does not affect any of Plaintiff's rights under ERISA, which includes suing to remedy a retaliatory discharge for exercising rights under the retirement benefits plan. *See* 29 U.S.C. § 1132.

█ The Railroad argues that the "patent purpose" behind the phrase "rights or privileges" under ERISA, was to preserve Plaintiff's right to continued participation in the 401(k) plan, but not to preserve the right to bring a retaliatory action. Even if that was the intent *ab initio*, the plain language of the sentence does not convey such a purpose. Moreover, when the contractual language is unambiguous as it is here, the Court must ascertain the parties' intent *only from the language in the contract. See In re Doyle*, 144 Ill.2d 451, 163 Ill.Dec. 515, 581 N.E.2d 669 (Ill.1991) (emphasis added). The Court cannot consider the affidavits submitted by the Railroad to ascertain the parties' intent absent ambiguity in the language.[5] The Railroad does not argue that the sentence is ambiguous, nor does the Court find ambiguity in its language. Thus, the Court finds that the Agreement, by itself, does not sup-

port such a complex reading as the Railroad would suggest.

The Railroad also argues that since the Plaintiff waived the underlying substantive claim for benefits in paragraph 9, he is barred from bringing a retaliatory suit based on that claim. The Railroad is mistakenly treating the two claims as the same. The substance of the claim for benefits has no bearing on whether Plaintiff was discharged for filing the claim. They are based on two different actions, i.e., wrongful denial of claim and wrongful discharge, and are not mutually dependant. Therefore, the Railroad's argument lacks merit.

The Court holds that the penultimate sentence of paragraph 8 allows the Plaintiff to bring this retaliatory discharge suit. In turn, the Court must deny the Railroad's Motion for Summary Judgment on the Affirmative Defenses. Moreover, since the Motion for Summary Judgment is denied, the Court denies Plaintiff's Motion to Strike Affidavits as moot.

**B. Plaintiff's Motion to Strike Affirmative Defenses and Motion to Dismiss Counterclaim.**

█ Since the Agreement allows the Plaintiff to bring this suit, the Court must strike the affirmative defenses of waiver, release and accord and satisfaction. Generally, affirmative defenses will be stricken "only when they are insufficient on the face of the pleadings." *Heller Financial v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Motions to strike "are 'not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense,'" *Glenside West Corp. v. Exxon Co.*, 761 F.Supp. 1100, 1115 (D.N.J.1991) (quoting *Durham Indus. v. North River Ins. Co.*, 482 F.Supp. 910, 913

---

5. If the Court considers the affidavits submitted by the Railroad, the sentence is ambiguous at best. Moreover, even if the Court found the provision to be ambiguous, the Railroad would lose because "[a]mbiguous contractual language is generally construed against the drafter of the language." *Duldulao v. Saint Mary of Nazareth Hospital*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 319 (Ill.1987). It is undisputed that

the Railroad drafted the Agreement. One reason for this rule of construction is that the drafting party could have protected its interest *ex ante* by using more specific language in the contract. It is unfortunate that while the Railroad painstakingly laid out the details of the waiver, it overlooked the anti-retaliation provision under ERISA. Nevertheless, the Court must adhere to the rule of contract construction.

904

(S.D.N.Y.1979)), and are inferable from the pleadings, *see United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975); *see also, Williams v. Eckerd Family Youth Alternative,* 908 F.Supp. 908, 910 (M.D.Fla. 1995) (motions to strike granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.").

As noted by both parties, there is no factual dispute as to the affirmative defenses. It only deals with the *legal* interpretation of the Agreement. Further, since the Court has interpreted the Agreement to read that retaliatory suits brought under ERISA are excepted from the waiver, the Railroad cannot succeed on its affirmative defenses as a matter of law. Thus, Plaintiff's Motion to Strike Affirmative Defenses must be allowed.

Plaintiff's Motion to Dismiss Counterclaim for breach of contract must also be allowed. As a matter of law, exercising rights preserved in the Agreement cannot constitute a breach of the Agreement.

*Ergo,* Plaintiff's Motion to Strike Affirmative Defenses is ALLOWED; Plaintiff's Motion to Dismiss Counterclaim is ALLOWED; the Railroad's Cross–Motion for Summary Judgment on Affirmative Defenses is DENIED; and Plaintiff's Motion to Strike Affidavits is DENIED as moot.