In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3756

ANIL GOYAL,

*Plaintiff-Appellee,*

*v.*

GAS TECHNOLOLGY INSTITUTE,
an Illinois corporation,

*Defendant.*

APPEAL OF:

BARRY A. GOMBERG

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:05-cv-05069—**Rebecca R. Pallmeyer**, *Judge.*

SUBMITTED APRIL 22, 2013—DECIDED JUNE 3, 2013

Before WOOD, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Attorney-appellant Barry A. Gomberg briefly represented appellee Anil Goyal in settlement negotiations with a former employer over his

claims of retaliation for whistle-blowing. The settlement negotiations did not produce an agreement, and Goyal later retained new counsel to pursue litigation. Years later, without the aid of any counsel, Goyal settled with his former employer.

Back when Gomberg had represented Goyal, though, he had given Goyal's employer notice of an attorney lien on any settlement or judgment. So after Goyal settled, Gomberg reappeared and demanded a share, and the employer paid a portion of the settlement to Gomberg rather than to Goyal. Goyal then sought to quash Gomberg's lien in the district court. The court granted Goyal's motion, effectively ordering Gomberg to pay Goyal. Gomberg has appealed, claiming that his lien on a portion of Goyal's settlement was proper. We affirm the order of the district court.

I. *Factual and Procedural Background*

Anil Goyal was an engineer whose employment with Gas Technology Institute (GTI) was suspended in September 2003 and terminated in March 2004 after he informed the chief executive officer that two of Goyal's superiors had engaged in fraud and that he believed other members of upper management were involved as well. We can assume the allegations had a good deal of substance. The two accused upper-level managers were indicted by a federal grand jury; one pled guilty and the other died before his case could be resolved.

After Goyal was suspended in September 2003, he retained Barry A. Gomberg & Associates to represent

him during mediation with GTI. Goyal and Gomberg signed a retainer agreement dated September 24, 2003, which provided:

> Our fee is an initial flat non-refundable retainer of $2,500. . . . In addition to the aforementioned Retainer fee, effective immediately our fee includes a ten (10) percent contingency on all monies and items of value that we secure for you beyond what you have obtained from Gas Technology Institute to this date . . . .

> We have a lien on all funds secured by us. Should we [be] required to enforce this Agreement, we will be entitled to reasonable attorneys fees and costs for doing so. We do not guarantee success. This Agreement does not contemplate litigation.

Gomberg began representing Goyal in mediation sessions, beginning with a first session on November 21, 2003. Two weeks later, on December 2, 2003, Gomberg sent a letter to GTI's attorneys claiming an "attorneys lien in the amount of $70,000 attached to any settlement, verdict, judgment, payment, or Order entered and to any monies recovered by Anil Goyal resulting from his current claims or possible future litigation against Gas Technology Institute." (Gomberg told the district court that he informed Goyal of this lien; Goyal claims that Gomberg did not inform him about the lien until after his representation ended. We need not resolve the factual dispute.) In the district court and in this appeal, Gomberg has not yet offered an explanation or basis for the amount of $70,000, which was much more than the

agreed ten percent of even GTI's largest and later offer to Goyal while Gomberg was representing him.

By March 2004, GTI had made a "final" offer to settle for $375,000. Goyal rejected the offer and his employment was terminated on March 9. At that point, Gomberg's representation of Goyal ended, as indicated in emails and letters. On March 12, 2004, Gomberg sent Goyal a letter stating:

> Per your request, this letter evidences the conclusion of our representation. As you know, GTI has offered you $375[,000] in one lump sum with Mutual releases. They are willing to work with you regarding tax relief. I have communicated the aforementioned to you. You have rejected this settlement. I remind you that we have filed an attorney's lien for our fees.

Goyal claims that this last quoted sentence is the first time he learned of any lien filed by Gomberg for attorney fees. He points to a letter he sent to Gomberg in response on March 24, 2004. In the letter, Goyal asked about the lien and stated his understanding that "if no settlement is reached then you will not receive any money other than the initial retainer money," and "since I have not received any money as of today as a result of your representation, your share so far would be only $2,500 of initial retainer fee which you have already received from me." Goyal and Gomberg then went their separate ways.

In September 2005, with assistance of new counsel, Goyal sued GTI in the Northern District of Illinois for retaliation in violation of the federal False Claims Act

and Illinois common law. The district court eventually denied summary judgment for GTI, see *Goyal v. Gas Technology Institute*, No. 05-cv-5069, 2008 WL 4369332 (N.D. Ill. Sept. 23, 2008), and about a month before the scheduled trial, Goyal's counsel withdrew as counsel citing irreconcilable differences with Goyal that had arisen over the course of settlement negotiations. Without further representation by counsel, Goyal settled with GTI for approximately $1.3 million in April 2009.[1] Gomberg had not forgotten about the case, though, and in December 2009, he sent GTI a request for payment of $34,022.52 in attorney fees from Goyal's settlement funds.[2]

---

[1] After Goyal reached the settlement with GTI, the firm that had represented Goyal in the district court asserted a lien on the settlement. Goyal's dispute with that firm was resolved in an earlier appeal. *Goyal v. Gas Technology Inst.*, 389 F. App'x 539 (7th Cir. 2010).

[2] The retainer agreement provided for a ten percent contingent fee on any funds "secured" by Gomberg beyond what Goyal had already been offered by GTI. When Goyal retained Gomberg, he had already been offered 32 weeks of pay as severance, which Gomberg calculated, based on Goyal's salary, to be $56,174.72. Gomberg subtracted that amount from the $375,000 final offer GTI made during Gomberg's representation (leaving $318,825.28 supposedly "secured" by Gomberg), and divided by ten. Adding in an amount for time spent trying to enforce the lien, Gomberg claimed he deserved $34,022.52 ([$318,825.28 ÷ 10] − $2,500 retainer + $4,640 in fees for enforcing the lien).

Goyal attempted to stop GTI's attorneys from honoring the lien and sought the assistance of a bar association to resolve his dispute with Gomberg. In January 11, 2010, though, GTI wired Gomberg the requested amount to be held in escrow in Gomberg's client funds account. Goyal quickly filed a motion to quash the lien with the district court. Magistrate Judge Keys granted the motion to quash, finding that the retainer agreement created an equitable assignment, but that the plain terms of the agreement allowed such an assignment only if Gomberg successfully negotiated a settlement acceptable to and paid to Goyal, which did not occur. Gomberg filed objections with District Judge Pallmeyer, who overruled the objections and observed that "obtaining an offer is not the same thing as 'securing' funds." Gomberg now appeals the district court's grant of Goyal's motion to quash the equitable lien.

II. *Analysis*

A. *Jurisdiction*

We have appellate jurisdiction to review the district court's grant of Goyal's motion to quash the lien because the order operated in substance as an interlocutory injunction under 28 U.S.C. § 1292(a)(1). See *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 566 (7th Cir. 2000) (even though district judge "did not use the magic word 'injunction,'" the order was injunctive in nature and appeal was therefore within appellate court's jurisdiction); *In re City of Springfield*, 818 F.2d 565, 567 (7th Cir. 1987) (orders are "injunctions" under

section 1292(a)(1) "if they effectively grant or withhold the relief sought on the merits and affect one party's ability to obtain such relief in a way that cannot be rectified by a later appeal"). Although the district court did not label its order granting Goyal's motion to quash as an injunction, the order had the effect of an injunction because it both required Gomberg to return the transferred funds and quashed an assignment to him of an equitable legal right — the lien. See *Home Fed. Sav. & Loan Ass'n of Centralia v. Cook*, 525 N.E.2d 151, 153-54 (Ill. App. 1988) (attorney liens create an "equitable assignment of a portion of the recovery, as opposed to a mere promise to pay" and can assert priority over other creditors); see also *Eastman v. Messner*, 721 N.E.2d 1154, 1156 (Ill. 1999) (defining liens in Illinois as involving an equitable assignment of debt with a right to priority over other creditors). We therefore have appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

Although not disputed by the parties, we must also clarify the foundation of the district court's jurisdiction over Goyal's motion to quash. District courts may exercise supplemental jurisdiction over disputes between attorneys and clients concerning costs and fees for representation in matters pending before the district court. See *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299-300 & n.5 (7th Cir. 1995) (collecting cases and stating that "supplemental jurisdiction generally has been asserted over attorney's fee disputes when the disagreement arises between the client and the lawyer"). Supplemental jurisdiction does not extend, however, to attorney fee disputes after the case has been dismissed and jurisdiction has been relinquished. See

*Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576-77 (7th Cir. 2005) (district court did not retain supplemental jurisdiction to resolve a dispute over a motion to quash an attorney fee lien where the district court had dismissed the case with prejudice, thus terminating federal jurisdiction); *Shapo v. Engle*, 463 F.3d 641, 644-45 (7th Cir. 2006) (no supplemental jurisdiction to enforce attorney-client master fee agreement after district court approved settlement and dismissed case).

In this case, although Goyal had settled with GTI, the district court had not entered a final judgment when it quashed Gomberg's lien. The case remained pending before the district court, and that distinction was vital for purposes of supplemental jurisdiction over the fee dispute. Cf. *Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp.,* 551 F.3d 599, 607-08 (7th Cir. 2008) (district court properly retained supplemental jurisdiction over state law claims after granting summary judgment against plaintiffs on Title IX claims where district court had not yet dismissed the federal claims). Because the case remained before the district court and the motion to quash concerned a dispute over fees for representation in the dispute before the court, the district court properly exercised its supplemental jurisdiction under 28 U.S.C. § 1367 in deciding Goyal's motion to quash Gomberg's lien.

B.  *The Motion to Quash the Lien*

We review *de novo* the district court's interpretation of the written retainer agreement as precluding

Gomberg's lien. *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 358 (7th Cir. 2009). Goyal and Gomberg executed the retainer agreement in Illinois for services in Illinois, so we apply the laws of that state in analyzing whether the agreement gave rise to a valid equitable lien. See *In re Motorola Securities Litig.*, 644 F.3d 511, 517 (7th Cir. 2011). "In Illinois, an attorney acquires an equitable lien on a judgment if the agreement between attorney and client makes an equitable assignment of a portion of the recovery, as opposed to a mere promise to pay. To make this determination requires an examination of the exact language of the contract." *Home Fed. Sav. & Loan Ass'n*, 525 N.E.2d at 153. We consider first the parties' retainer agreement and then Gomberg's extra-contractual theories.

### 1. *The Terms of the Retainer Agreement*

Like Judge Pallmeyer, we agree with Judge Keys' well reasoned opinion that Gomberg does not hold a valid lien on Goyal's settlement. The retainer agreement authorized an equitable lien on only the funds "secured by us." Gomberg's representation put no cash in Goyal's hands. Gomberg argues, though, that GTI's offer of $375,000 in early 2004 constituted funds that he "secured" for Goyal. In support he cites a dictionary's definition of "secure" as "to give a pledge of a payment to (a creditor) or of (an obligation); to bring about, effect." Gomberg seems to be relying on the part of the definition that refers to securing repayment of a debt

with a promise to pay, but such "security" requires an agreement between the relevant parties. That portion of the definition has no application here, of course, for the parties (GTI and Goyal) simply never reached an agreement while Gomberg was involved.

Gomberg argues further that he "secured" $375,000 for Goyal when GTI made the offer: "If Mr. Goyal had accepted the settlement offer of $375,000.00, GTI would have paid it. The offer was on the table. All it required was Mr. Goyal's agreement." That's true but legally irrelevant. In our legal system, it is axiomatic that there is no contract (and no settlement) without both offer and acceptance. This is a fundamental principle of contract law. See 2 Williston on Contracts § 6:1 (4th ed.) ("Acceptance of an offer is necessary to create a simple contract, since it takes two to make a bargain."); Restatement (Second) of Contracts § 3 (1981) ("An agreement is a manifestation of mutual assent on the part of two or more persons."). GTI's offer, alone, in no way "secured" funds for Goyal and thus no funds were "secured" by Gomberg. Another fundamental principle of contract law dictates that an offer, once rejected, no longer exists. See *Minneapolis & St. Louis Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149, 151 (1886) ("[N]o contract is complete without the mutual consent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. . . . [A]nd either rejection or withdrawal leaves the matter as if no offer had ever been made."). GTI's offer of $375,000 was extinguished once Goyal rejected it.

To illustrate how unreasonable Gomberg's position is, suppose that one condition of GTI's offer had been Goyal's agreement never to work in the industry again. Receiving an offer with such an onerous condition would not have meant that his attorney had "secured" the offered funds. And Goyal retained the right to reject any conditions of a proposed settlement, including even the mutual releases that would be customary.

Or suppose that GTI and Goyal had actually agreed to settle for $375,000, with a written and signed settlement agreement with mutual releases. And then suppose that GTI had reneged on the agreement and refused to pay. No attorney in his right mind would claim that he had then "secured" $375,000 for Goyal and was then entitled to immediate payment of a percentage of the unpaid settlement. See Restatement (Third) of Law Governing Lawyers § 35(2) (2000) ("Unless the contract construed in the circumstances indicates otherwise, when a lawyer has contracted for a contingent fee, the lawyer is entitled to receive the specified fee only when and to the extent the client receives payment."). Gomberg did not take Goyal even as far as an agreement, and yet he still claims a right to a fee based on having obtained an unacceptable offer.

The retainer agreement's term "secured by us" is not ambiguous as applied to the unaccepted offer. Gomberg is not entitled to an equitable lien on funds that were merely offered to Goyal on terms that were not acceptable to him.

2.  *Extra-contractual Theories*

In the alternative, Gomberg attempts to establish a legal right to a portion of Goyal's settlement funds under either Illinois' statutory lien provision or the equitable remedy of *quantum meruit*. Neither entitles Gomberg to any of Goyal's settlement funds. The Illinois Attorney's Lien Act, 770 Ill. Comp. Stat. 5/1, grants an attorney a lien "for the amount of any fee which may have been agreed upon by and between such attorneys and their clients." *Id*. For the reasons explained above, Goyal and Gomberg's retainer agreement did not provide for a lien on ten percent of the settlement offer GTI made during Gomberg's representation. If the attorney and client have not made a fee agreement, the Act provides for reasonable fees and costs, but that provision is not available when the attorney and client entered into a fee agreement. 770 ILCS 5/1; *In re Solis*, 610 F.3d 969, 974 (7th Cir. 2010) (attorney could not rely on Illinois lien statute to increase fee above amount under valid fee agreement).

As to *quantum meruit*, Illinois law provides an equitable remedy for attorneys retained on a contingent fee basis to "recover on a *quantum meruit* basis a reasonable fee for services rendered before discharge*." Leoris and Cohen, P.C. v. McNiece*, 589 N.E.2d 1060, 1063-64 (Ill. App. 1992), citing *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969 (Ill. 1979). This mechanism protects attorneys from the unfairness of being fired by a client on the brink of settlement or victory. It permits attorneys to recover reasonable fees even when clients inexplicably ter-

minate their representation shortly before realizing the financial benefit of their work. See *Kannewurf v. Johns*, 632 N.E.2d 711, 714-16 (Ill. App. 1994).

Although Gomberg requested this relief in conclusory terms, he has not argued why the circumstances of the termination of his representation of Goyal should actually entitle him to such compensation. See *id*. at 715-16 (*quantum meruit* compensation is available only to attorneys who are discharged or who justifiably withdraw from representation). He failed to develop the argument before the magistrate judge and made no argument on the point before the district judge. We thus deem the argument waived.[3]

---

[3] We are also confident that any such claim would have no merit. The factors to consider in determining reasonable value of services under *quantum meruit* include the difficulty of the work and the benefit to the client. See *Ashby v. Price*, 445 N.E.2d 438, 444 (Ill. App. 1983). Here, the terms of retainer agreement limited the scope and complexity of Gomberg's representation so as not to include litigation. Gomberg himself appears to have believed that his responsibilities under the retainer agreement required minimal time and effort. In two emails Gomberg said that his services under the retainer agreement did not even include legal research — he wanted extra payment for research. Judge Keys aptly pointed out that this raised the question whether legal representation that does not include legal research is legal representation at all. Goyal also received no visible benefit from Gomberg's representation. Gomberg represented him in a brief course of negotiations that produced only an unsatisfactory settlement offer that was

(continued...)

III. *Conclusion*

Attorney Gomberg is not entitled to any part of the settlement funds Goyal secured from GTI in 2009. We also believe Gomberg's professional conduct is questionable in two distinct respects. First, for reasons we explained above, his position that he "secured" funds for Goyal when the opposing party made an unacceptable and unaccepted settlement offer is unreasonable to the point of being frivolous and possibly warrants sanc-

---

[3] (...continued)

just one-fourth of what Goyal settled for on his own five years later. Gomberg may have been disappointed with what he perceived as a meager retainer for the little work he did, but he might have prevented that disappointment by asking for different fee terms at the outset. By drafting the retainer agreement's fee terms as he did, he accepted the risk that he would receive no additional funds beyond the initial retainer. See *In re Solis*, 610 F.3d at 974 ("The onus is on the attorney to recognize the risks and to draft fee agreements that clearly indicate the client's fee responsibilities."); 1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 8.6:8-15 (2001) ("The whole point of contingent fees is to remove from the client's shoulders the risk of being out-of-pocket for attorney's fees upon a zero recovery. Instead, *the lawyer* assumes that risk . . . .") (emphasis in original); *id.* § 8.4:8-12 (2001 & Supp. 2003) ("because the terms of a fee agreement must be made clear to the client in advance, and because the lawyer is responsible for drafting most fee agreements, ambiguities are usually resolved against the lawyer").

tions under Federal Rule of Appellate Procedure 38. Second, even apart from a legal theory that we consider specious, Gomberg's assertion of a lien for $70,000 was far greater than ten percent of even GTI's unaccepted (and not yet made) offer of $375,000. We see no apparent basis for it.

We recognize that attorneys and clients will have reasonable and good faith disputes about fees, but we believe that Rule of Professional Conduct 1.5 on attorney fees includes an implicit requirement that an attorney not assert unreasonable or baseless demands for attorney fees contrary to his fee agreement, including asserting a lien. Cf. Restatement (Third) of Law Governing Lawyers § 43, cmt. h (2000) (a "fee claim with respect to which a lien is asserted must be advanced in good faith and with a reasonable basis in law and fact"). We also recognize that further factual development may clarify and perhaps justify this course of conduct. We therefore order Gomberg to show cause within 14 days why we should not impose sanctions under Federal Rule of Appellate Procedure 38 and why we should not forward a copy of this opinion to the Illinois Attorney Registration and Disciplinary Commission with a request that it determine whether his conduct warrants disciplinary action. We compliment Mr. Goyal for his capable handling of this matter before this court. Upon issuance of this court's mandate, which will not be delayed for resolution of the sanctions question, attorney Gomberg shall immediately pay to Mr. Goyal the money he has been holding, plus interest.

The district court's order quashing attorney Gomberg's lien is AFFIRMED.