In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1982

DEMARCO NICHOLS,

*Plaintiff-Appellant,*

*v.*

JOSEPH LONGO and LONGO AND
ASSOCIATES, LTD,

*Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-01789 — **Thomas M. Durkin**, *Judge.*

SUBMITTED JUNE 7, 2021 — DECIDED JANUARY 7, 2022

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges.*[1]

[1] This successive appeal has been submitted to the original panel under
Operating Procedure 6(b). We have unanimously agreed to decide the
case without argument because the briefs and record adequately present
the facts and legal arguments, and oral argument would not significantly
aid the court. *See* Fed. R. App. P. 34(a)(2)(C).

RIPPLE, *Circuit Judge*. On November 7, 2019, DeMarco Nichols prevailed in a discrimination action against his employer. The district court entered judgment awarding Mr. Nichols $300,000 in compensatory damages and various forms of equitable relief, including back pay and pension contributions as well as reinstatement. Two years later, the district court ruled on his attorney Joseph Longo's post-trial motion for statutory attorney's fees, awarding Attorney Longo $774,645.50. Attorney Longo appealed this statutory fee decision.

While the statutory attorney's fees appeal proceeded in this court, Mr. Nichols filed in the district court a motion to adjudicate attorney's fees and for other relief. He had executed a contingency fee agreement prior to filing the underlying discrimination action, and he challenged Mr. Longo's assertion that he had a right to 45% of the entire relief, including the total monetary award and all equitable relief.[2] Attorney Longo contended that he had a right to this amount under the contingency fee arrangement *in addition to* the entire statutory attorney fees award. Mr. Nichols maintains that Attorney Longo's fee demand is excessive and violates Illinois Supreme Court Rule 1.5. In his view, the contingency agreement itself is unconscionable.

The district court, while expressing concern about Attorney Longo's position, determined that this dispute was not within its jurisdiction. It concluded that its "jurisdiction does not extend [] to attorney fee disputes after the case has been

---

[2] Attorney Longo unilaterally calculated the value of reinstatement at $1 million.

dismissed and jurisdiction has been relinquished."[3] About two months later, we affirmed the statutory attorney fee award of the district court.

We now affirm the judgment of the district court.[4] The court correctly determined that the current dispute over the contingency contract is not within its jurisdiction.

## DISCUSSION

### A.

We review de novo a determination of subject matter jurisdiction. *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 567 (7th Cir. 2021). Here, we must decide whether the district court was correct in holding that its ancillary jurisdiction did not extend to an adjudication of the validity of a contingency fee agreement between one of the parties to the underlying litigation and his attorney.

The Supreme Court has made clear that, in addition to the authority granted by the supplemental jurisdiction statute, 28 U.S.C. § 1367,[5] federal courts retain, by virtue of their

---

[3] R.364 at 6 (alteration in original) (quoting *Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013)).

[4] Our jurisdiction is secure under 28 U.S.C. § 1291.

[5] We set out in plenary fashion the genesis and history of this statute in *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1298–1300 (7th Cir. 1995). We emphasized that there is no gap between the outer bounds of supplemental jurisdiction and Article III. *See id.* at 1299. Thus, "[i]f a claim is close enough to the federal (or other) claim that confers federal jurisdiction to be part of the same case, there is no constitutional bar to the assumption of federal jurisdiction over the claim." *Id.* (quoting *Brazinski v. Amoco Petro. Additives Co.*, 6 F.3d 1176, 1181 (7th Cir. 1993)).

inherent authority to protect their judgments, limited author-
ity to address matters related, but tangential, to cases within
their jurisdiction.[6] *See Peacock v. Thomas*, 516 U.S. 349, 354 n.5
(1996). In this way, ancillary enforcement jurisdiction enables
"a court to function successfully, that is, to manage its pro-
ceedings, vindicate its authority, and effectuate its decrees."
*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380
(1994); *see also Boim v. Am. Muslims for Palestine*, 9 F.4th 545,
551 (7th Cir. 2021). Whatever the outer limits of this authority
may be, our case law and that of our sister circuits establish
that ancillary jurisdiction extends to the adjudication of stat-
utory attorney's fees after the termination of a case. *See
O'Donnell v. Saul*, 983 F.3d 950, 956 (7th Cir. 2020).

We have acknowledged, however, that there are limita-
tions on the exercise of ancillary enforcement jurisdiction. On

---

[6] As our colleagues in the Eight Circuit have explained:

> The existence of ancillary enforcement jurisdiction apart
> from the supplemental jurisdiction embodied by § 1367 is
> evidenced by *Kokkonen*['s] caveat that its use of the term
> "ancillary jurisdiction" was in a "very broad sense" and
> by its lack of reliance on § 1367. Furthermore, the distinc-
> tion is supported by the Supreme Court's comment in
> *Peacock v. Thomas* that "Congress codified *much* of the
> common-law doctrine of ancillary jurisdiction as part of
> 'supplemental jurisdiction' in 28 U.S.C. § 1367," as well as
> by statements from several of our sister circuits recogniz-
> ing that ancillary enforcement jurisdiction is a viable doc-
> trine that was not codified in § 1367.

*Myers v. Richland County*, 429 F.3d 740, 746–47 (8th Cir. 2005) (first quoting
*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994); and
then quoting *Peacock v. Thomas*, 516 U.S. 349, 354 n.5 (1996) (emphasis
added)).

one hand, we have recognized such jurisdiction when "the judgment explicitly incorporates the settlement, or reserves authority to enforce the settlement." *Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576 (7th Cir. 2005) (quoting *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994)). Thus, in *Baer*, we approved a district court's exercise of "affirmative control" over the disputed funds when it had approved a settlement agreement ending the underlying litigation that acknowledged the dispute and set a process for settling that dispute. *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1301 & n.7 (7th Cir. 1995). Importantly, the district court had retained jurisdiction over the settlement and had required that the funds be deposited with the court. *Id.* at 1301. However, in later cases, we explained that ancillary enforcement "jurisdiction does not extend … to attorney fee disputes after the case has been dismissed and jurisdiction has been relinquished." *Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013); *see also Hill*, 405 F.3d at 576–77 (holding that the district court could not exercise jurisdiction after a case settled and was dismissed where the court did not expressly retain jurisdiction or incorporate the settlement agreement into its judgment). These cases simply acknowledge that, when the matter brought before the district court cannot be considered part of the underlying case, that dispute is not within the ancillary enforcement jurisdiction of the district court. The new dispute simply cannot be considered as "incidental" to matters properly before the district court in the original action. *Kokkonen*, 511 U.S. at 378.

Therefore, although "[o]ne of the best-established uses of ancillary jurisdiction is over proceedings concerning costs and attorney's fees," our jurisdiction does not extend to a state law contract dispute after the original litigation has ended,

even if the dispute is between a party and his attorney. 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523.2 (3d ed. Supp. 2021). There is a critical difference between determining the fees to which a party or attorney is entitled or even enforcing that order, and "the typical sort of standalone dispute over fees that might arise between an attorney and his client after litigation has run its course." *O'Donnell*, 983 F.3d at 956.

This distinction is ingrained in our case law. Over fifty years ago, we held that a district court lacked jurisdiction to hear a contract claim between citizens of the same state after the underlying judgment had been satisfied and distributed. *See Bounougias v. Peters*, 369 F.2d 247, 249 (7th Cir. 1966). There, shortly before the judgment was satisfied, the lawyer-plaintiff contingent fee agreement was modified so that the lawyer would receive a higher share. After the judgment was satisfied, the plaintiff challenged the modification on contract law grounds. *Id.* We held that the district court lacked ancillary jurisdiction over the dispute between the lawyer and the client because the underlying judgment was satisfied and distributed, the facts underlying the fees dispute differed from the underlying litigation, and the district court did not have the litigation's property under its control. *Id.*; *accord Taylor v. Kelsey*, 666 F.2d 53, 54 (4th Cir. 1981) (concluding that ancillary jurisdiction did not cover a post-settlement dispute between lawyer and client where "[t]he fee dispute did not arise as a matter of necessity from anything which occurred in the [original] proceedings … , nor did the district court have control over the fee in the sense that the court was required to establish and distribute a fee"; thus, "the controversy arose purely from a private contract dispute between two Virginia residents").

**B.**

Having set forth the principles that must guide our decision, we now turn to the concrete situation before us. As the district court noted, the underlying litigation had closed, and it had entered a final judgment before Mr. Nichols filed his motion. Only after the judgment was executed and disbursed did Mr. Nichols ask the district court to adjudicate a contractual matter governed by state law. This is an "entirely new and original" proceeding where "the relief sought is of a different kind or on a different principle than that of the prior decree." *Peacock*, 516 U.S. at 358 (cleaned up).

Courts no doubt have the authority to "assist in the protection of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Yang v. City of Chicago*, 137 F.3d 522, 525 (7th Cir. 1998) (quoting *Peacock*, 516 U.S. at 356). But, as we already have noted, our precedent establishes that such ancillary enforcement jurisdiction does not generally extend to a contractual fees dispute between a party and an attorney after the underlying case is dismissed and jurisdiction relinquished. *See Goyal*, 718 F.3d at 717.

Nor can we say that the pendency of an appeal on the statutory fee award bestowed on the district court the ancillary jurisdiction to consider the validity of the contingency fee agreement between Mr. Nichols and Attorney Longo. Our precedent makes clear that the existence of a contingency fee agreement is not a matter that the district court may consider in the award of statutory fees. *Cf. Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) ("The contingent fee that an attorney earns from his client and the statutory fee that an attorney recovers from the losing party represent distinct

entitlements."); *City of Burlington v. Dague*, 505 U.S. 557, 562–64, 567 (1992) (holding that the contingency aspect of a case cannot be considered when determining a statutory fee award). Therefore, any adjudication concerning the validity of the contingency agreement cannot be considered as ancillary to the pendency of the statutory fees dispute.

We are aware that declining to exercise ancillary jurisdiction over the contingency fee dispute introduces a certain measure of inefficiency into the final adjudication of this issue. Mr. Nichols contends that Attorney Longo violated Illinois Supreme Court Rule 1.5 against excessive fees and that the contract between them is unconscionable. Illinois requires contingent fees to be reasonable. *In re Teichner*, 470 N.E.2d 972, 977–78 (Ill. 1984). A fee is excessive when "a lawyer of ordinary prudence would be left with a definite and firm conviction" that the fee was in excess of a reasonable fee. *Id.* at 978. The rules of professional conduct provide as a guide for calculating a reasonable fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Ill. Sup. Ct. R. Pro. Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010); *In re Teichner*, 470 N.E.2d at 977–78. Analyzing these factors requires revisiting matters already addressed by the district court, namely Mr. Longo's work, skill, time, reputation, ability, and the fees of comparable legal services when ruling on Mr. Longo's motions for statutory attorney's fees. However, any inefficiency is mitigated somewhat because the state court must apply its own standards of professional ethics and contract law. Any loss of efficiency must yield, moreover, to restrictions on judicial authority, restrictions that implicate directly fundamental principles of federalism.[7]

## CONCLUSION

The district court correctly held that it did not have jurisdiction to adjudicate the validity of the contingency fee

---

[7] We note that the Illinois courts have significant experience in adjudicating the validity of contingency fee arrangements arising out of federal litigation. *See, e.g.*, *Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 918 N.E.2d 1117, 1121 (Ill. 2009) (analyzing a contingency fee arrangement between a client and a lawyer from a federal case); *Chandra v. Chandra*, 53 N.E.3d 186, 191 (Ill. App. Ct. 2016) (same); *Krantz v. Chessick*, 668 N.E.2d 77, 81 (Ill. App. Ct. 1996) (same); *Hapaniewski v. Rustin*, 535 N.E.2d 24, 26 (Ill. App. Ct. 1989) (analyzing whether an attorney from a federal court case had perfected their attorney's lien such that they were entitled to fees).

agreement between Mr. Nichols and Attorney Longo. Its judgment is therefore affirmed.

AFFIRMED