In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 22-2003

ANDREW STACY,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-00301 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED FEBRUARY 7, 2023 — DECIDED JUNE 2, 2023

_____

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI,
*Circuit Judges.*

BRENNAN, *Circuit Judge.* A restitution order in a criminal
case requires Andrew Stacy to pay the government more than
one million dollars. But the government also owes Stacy
$75,000 from a Federal Tort Claims Act settlement. The gov-
ernment plans to offset the FTCA settlement against Stacy's
restitution debt, to which he objects. The district court rejected
Stacy's challenge to the government's use of offset, and we

affirm. Federal law authorizes the government to offset Stacy's settlement award against his restitution debt.

## I. Background

Stacy's restitution obligations arose from a 2014 conviction for bank fraud. The district court sentenced him to a term of imprisonment and ordered restitution. In total, the court ordered Stacy to pay $1,495,689.60 jointly and severally with a codefendant. Though payable to the United States, the government forwards collected money to Stacy's victims.

Stacy's time in prison eventually led to an FTCA claim. When Stacy entered federal custody in 2015, he suffered from pain and limited range of motion in his hip. Those problems worsened while incarcerated, and he sought treatment through the prison medical system. A consulting orthopedic surgeon recommended a prompt hip replacement. But Stacy did not receive the procedure while incarcerated—it was performed only after his release in 2016. Stacy filed suit against the United States in 2019, alleging the federal prison was negligent in failing to procure his hip replacement surgery. The United States settled with Stacy in 2021, not admitting liability but agreeing to pay him $75,000.

While the settlement concluded the FTCA claim, it did not resolve what would happen with the settlement funds. The parties differed on whether the money could be offset against Stacy's outstanding restitution obligations, and they memorialized that dispute in the settlement agreement. The government expected the Treasury Department "to offset the entire $75,000 settlement amount … for application to Stacy's criminal judgment debt." Stacy disagreed and preserved the right to "file a motion before the district court seeking to prevent

the United States Department of the Treasury from perform-
ing an offset." The parties executed the agreement, and Stacy
moved in the district court to preclude the offset. The district
court rejected Stacy's arguments and held that the govern-
ment can offset his settlement money. Stacy appeals.

## II. Jurisdiction

We determine first whether we have jurisdiction and
whether sovereign immunity shields the government's offset
use from judicial challenge. *See generally Avila v. Pappas*, 591
F.3d 552, 553 (7th Cir. 2010); *Lipsey v. United States*, 879 F.3d
249, 253 (7th Cir. 2018). Resolution of both issues turns on
interpretation of the FTCA, which "waive[s] the sovereign im-
munity of the United States for certain torts committed by fed-
eral employees" and confers federal court jurisdiction over
qualifying claims. *FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994)
(citing 28 U.S.C. § 1346(b)). The parties agree the district court
had jurisdiction over Stacy's negligence claim against the
United States, but they dispute whether 28 U.S.C. § 1346(c)
confers federal court jurisdiction over Stacy's offset challenge.

That provision says, "The jurisdiction conferred by this
section includes jurisdiction of any set-off, counterclaim, or
other claim or demand whatever on the part of the United
States against any plaintiff commencing an action under this
section." § 1346(c). Stacy argues this waives sovereign im-
munity and confers federal court jurisdiction over his chal-
lenge to the government's use of offset here. The government
disagrees. It reads § 1346(c) narrowly, arguing federal courts
in FTCA cases have "jurisdiction over a set-off or other claim
*only* when that other claim is brought by the United States
against the plaintiff, not the other way around." Because Stacy
challenges offset here, the government asserts § 1346(c) fails

to waive sovereign immunity or grant jurisdiction. Per the government, "The court in an FTCA case can award damages, but there is nothing in the FTCA that gives courts the power to say what happens to the money." The district court resolved this issue in Stacy's favor, holding that § 1346(c) "is written broadly and includes all cases, like this case, where the United States claims a set-off against an FTCA plaintiff." "We review de novo a determination of subject matter jurisdiction." *Nichols v. Longo*, 22 F.4th 695, 697 (7th Cir. 2022) (citing *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 567 (7th Cir. 2021)).

The plain language of § 1346(c) confers jurisdiction here. Stacy is a "plaintiff commencing an action under [the FTCA]," and he is challenging a "set-off … on the part of the United States" being used against him. § 1346(c). Resisting this conclusion, the government asks us to read "on the part of the United States against any plaintiff" as a one-way conferral of jurisdiction applicable only when the government seeks an offset—not when an FTCA plaintiff seeks to enjoin an offset. We disagree with the government's reading. Section 1346(c) grants subject matter jurisdiction over "*any* set-off … *whatever* on the part of United States" against an FTCA plaintiff. *Id.* (emphasis added). The instigating party's identity does not matter. Even though Stacy was the movant below, the United States still seeks to use offset against an FTCA plaintiff. Accordingly, jurisdiction exists to hear this case.

### III. Discussion

We turn to the merits of Stacy's appeal. He presents four main arguments for why the government is not authorized to offset his FTCA settlement award against his restitution debts. First, he asserts that the statute governing criminal restitution

procedure, 18 U.S.C. § 3664, outright prohibits use of offset to enforce restitution obligations. Second, he argues that offset is improper because offset only applies to funds owed to the government and, per Stacy, his debt is "owed" to his victims. Third, Stacy contends that offset is only appropriate for delinquent debts, and he claims to be current on his obligations. Fourth, Stacy asserts that nothing in his restitution order mandates that "settlements or other forms of large funds received by [the] plaintiff … be applied toward his restitution."

The government responds that through his criminal plea agreement, Stacy waived his challenge to offset. Beyond waiver, the government asserts an offset is authorized by statute and consistent with the district court's restitution order. Because the government's ability to offset turns on statutory interpretation, our review is de novo throughout. *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018).

We start with this last point, the government's contention that Stacy may not challenge offset. When Stacy pleaded guilty, he "agree[d] that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court." The government reads that provision to mean that Stacy has waived "any challenge to the United States' administrative offset rights." We see it differently. Stacy agreed the government could use 18 U.S.C. §§ 3572, 3613, and 3664(m). But neither § 3572 nor § 3613 deal directly with offset. Section 3664 authorizes enforcement of restitution by "all other available and reasonable means," but whether "all other available and reasonable means" includes offset is one of the questions

Stacy raises on appeal. § 3664(m)(1)(A)(i)–(ii). So, nothing in the agreement forecloses Stacy's challenge to the offset.

Turning to Stacy's four arguments, we begin with whether § 3664—which outlines procedures for enforcing restitution orders—bars the use of offset. Stacy argues that statute does, and he directs our attention to subsection (c), which states, "The provisions of this chapter, chapter 227, and Rule 32(c) of the Federal Rules of Criminal Procedure shall be the only rules applicable to proceedings," meaning restitution proceedings, "under this section." Stacy interprets § 3664(c) to mean that the government cannot enforce a restitution order using tools, like offset, housed elsewhere in the Code. But this interpretation ignores § 3664(m)(1)(A), which reads "(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or (ii) *by all other available and reasonable means*." *Id.* (emphasis added). By its plain text, § 3664 authorizes the government to enforce restitution orders not just through a stipulated set of mechanisms but also through "all other available and reasonable means." *Id.* Offset, as a collection tool available to the United States, is such a means of enforcement. *See* 31 U.S.C. §§ 3728, 3711, 3716.

Perhaps recognizing this issue, Stacy suggests that 18 U.S.C. § 3664(n) changes the equation. That provision requires an individual who "receives substantial resources … including … settlement … during a period of incarceration" to apply the value of those resources to outstanding restitution debts. § 3664(n). For Stacy, the fact that subsection (n) requires incarcerated individuals to apply settlement money to their restitution debt means non-incarcerated individuals need not do so. But this argument fails in view of § 3664(m),

which authorizes the United States to enforce restitution orders using all its available and reasonable means. We do not read § 3664(n) to constrain a co-equal statutory provision.

As a final point, Stacy agrees that the United States can enforce restitution orders but argues § 3664 "does not say an *order of settlements or judgments received* may be enforced by the United States." So, Stacy contends that "[r]estitution ordered by a court in a criminal proceeding is separate to any settlements received in a civil suit." This argument reflects a mistaken understanding of restitution, which creates a debt obligation that may be satisfied from qualifying defendant assets. *United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007) ("An order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment … ."); 18 U.S.C. § 3613(c) (stating that a restitution order creates a lien in favor of the United States). A settlement award is one such asset, so restitution and settlement funds are not separate as Stacy contends. Nor does the government enforce a settlement agreement or civil judgment merely by capturing the qualifying proceeds. In sum, § 3664 does not prevent the government from using offset.

Second to consider is whether, in this context, offset is otherwise authorized. For that, we briefly review federal offset statutes.

Title 31 U.S.C. § 3728 addresses situations, like here, where a plaintiff wins a judgment against the United States but already owes the government money. In that case, § 3728 commands that "[t]he Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government." § 3728(a). It then describes

the government's next steps for dealing with the money: the government can offset the judgment amount if the plaintiff agrees, or it can "have a civil action brought if one has not already been brought." § 3728(b); *see also* 31 C.F.R. § 256.22.

Different offset rules are housed in 31 U.S.C. § 3711 and § 3716.[1] Section 3711(a)(1) requires executive, judicial, or legislative agency heads to try to collect claims "of the United States Government for money or property." It also provides that an agency head is not to discharge any outstanding debt until all appropriate collection steps have been taken, "including (as applicable)—(A) administrative offset." § 3711(g)(9)(A). For its part, § 3716(a) addresses what happens when an agency head's collection efforts are not successful: "After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive, judicial, or legislative agency may collect the claim by administrative offset." That same section also requires federal agencies owed a "legally enforceable nontax debt that is over 120 days delinquent" to notify the Secretary of the Treasury "for purposes of administrative offset." § 3716(c)(6)(A).

We pause to highlight the relevant distinctions between the two offset statutes at play, § 3728 and § 3716. The first is that § 3728 is more specific than § 3716. Whereas § 3728 deals precisely with judgments won against the United States, § 3716 covers a broad swath of debts owed to the government. *Cf.* §§ 3728(a); 3716(a). Second, offset under the two provisions takes place at different points in the payment timeline.

---

[1] Section 3716 refers to offset as "administrative offset," while § 3728 uses the term "setoff." For sake of consistency, we describe operation of both statutes as "offset."

Section 3728 offset occurs "prior to payment certification," while § 3716 offset happens after certification but before disbursement. *Compare* 31 C.F.R. § 256.21, *with* §§ 285.1(m)(1), *and* 285.5(d)(6), (e)(1). Given its more specific application, § 3728 appears to control offset in this context. Nonetheless, we examine both § 3728 and § 3716 for any indication that the United States may not offset Stacy's settlement.[2]

Looking to this statutory framework, Stacy argues that offset is authorized only for debts owed to the United States. Offset cannot apply to him, he says, as restitution is owed to victims, not the United States. Stacy is partially correct. Indeed, offset applies only to debts owed to the government. Sections 3716 and 3711 both refer to the government collecting "claims," with "claim" statutorily defined as "any amount of funds or property that has been determined by an appropriate official of the Federal government to be *owed the United States*." 31 U.S.C. § 3701(b)(1) (emphasis added). Section 3728(a), likewise pertains to "debt[s] the plaintiff *owes to the Government*." § 3728(a) (emphasis added). But Stacy is incorrect that his restitution debt is not "owed" to the United States for purposes of offset—it is. The statutory scheme for payment of restitution debt makes this clear.

To start, Stacy's restitution is paid directly to the United States, not the victims. Under 18 U.S.C. § 3612(c), the Attorney General is responsible for collecting unpaid restitution. That strongly signals restitution debt is a debt owed to the government. Moreover, § 3612(c) provides that "[a]n order of restitution … does not create any right of action against the United

---

[2] A comparison of these two offsets can be found here: https://fiscal.treasury.gov/judgment-fund/offsets.html.

States by the person to whom restitution is ordered to be paid." So, the victims are not authorized to sue the United States if the government fails to disburse the restitution it collects from offenders. This further confirms that restitution is a debt owed to the government. And for offset under 31 U.S.C. § 3716, the definitions section lends additional clarity. As discussed above, § 3716 refers to the government collecting "claims." For purposes of § 3716, the meaning of "claim" or "debt" "includes, without limitation … any amount the United States is authorized by statute to collect for the benefit of any person." § 3701(b)(1)(D). Restitution is a debt collected by the government for the benefit of another person, so it qualifies under that definition as a "debt" or "claim" subject to offset.

For these reasons, Stacy's argument that his restitution debt is not owed to the United States lacks statutory support. At least one other circuit court similarly reads these offset statutes. *See United States v. Whitbeck*, 869 F.3d 618, 620 (8th Cir. 2017) ("An order of restitution … is based on the victim's losses, but it is an obligation owed to the government.") (citation omitted).

Third, Stacy argues that offset is authorized only for "delinquent" financial obligations and emphasizes that he is current on his monthly restitution payments. This position apparently relies on language from the offset statutes and regulations indicating that only delinquent or past due debt qualifies. *See* § 3711(g)(9)(A) (instructing that agency heads must make appropriate efforts "[b]efore discharging any delinquent debt"); 31 C.F.R. § 285.5(d)(3)(i) ("A debt submitted to Fiscal Service for collection by centralized offset must be: (A) Past-due in the amount stated by the creditor agency … .").

Assuming without deciding[3] that offset applies only to delinquent debt, this contention does not help Stacy. Contrary to his arguments, his debt *is* delinquent. When the sentencing court ordered Stacy to pay restitution, it included instructions in a "Schedule of Payments" document. There, the court ordered that Stacy's restitution was to be made in a "lump sum payment … due immediately." The court provided further information in a "special instructions" section, where it ordered: "The financial obligations are due immediately from any non-exempt assets. Otherwise, during imprisonment, Defendant shall make payments through the BOP's Inmate Financial Responsibility Program. Any balance remaining upon release shall be paid while on supervised release in an amount that is equal to 10% of Defendant's net monthly income."

Notwithstanding the first sentence repeating that restitution is "due immediately," Stacy reads the special instruction as creating distinct, severable obligations. For Stacy, the first sentence means that "if the person owing a criminal restitution has all the funds available immediately, then it is to be paid." But, because his non-exempt assets fell short, Stacy contends his obligations changed. He believes he was required to make payments through the Inmate Financial Responsibility Program while incarcerated and, now that he has been released, is responsible for paying monthly 10% of his net monthly income. Based on this interpretation, Stacy argues his restitution debt is not past due or delinquent.

We read the district court's sentencing order differently. The schedule of payments sheet lists various options from

---

[3] Nothing in 31 U.S.C. § 3728 or its accompanying regulations suggests that only delinquent debt may be offset against a judgment award.

which the district court can choose. Though several involve installment payments, in Stacy's case the district court selected "[l]ump sum payment." By doing so, the court ordered Stacy to make a lump sum payment "due immediately." The court provided additional detail in a special instructions section: "The financial obligations are due immediately from any non-exempt assets." Given that language, Stacy's restitution was due in full on the date his sentence was imposed. Stacy has not satisfied the entire amount, so it is delinquent.

Stacy responds that the sentencing order lays out an installment schedule, such that his restitution is current as long as he keeps making his 10% net monthly income payments. Contrary to Stacy's interpretation, though, the court's implementation of minimum monthly payments does not modify the underlying tardiness of his restitution debt. When we interpret restitution orders, we consider any conditions of supervised release. *See United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006) ("The [sentencing] form must be read harmoniously with the statute and the special condition of supervised release … ."). Doing so here confirms the function of Stacy's special payment instructions. One of Stacy's special conditions of supervised release commands, "The balance of any financial obligation shall be paid in monthly payments during supervised release at a rate of ten percent of the defendant's net monthly income." Given that condition, Stacy's monthly payments do not mean his debt, which was due immediately as a lump sum, is current. Rather, the monthly payments serve as a minimum threshold above which Stacy must remain to avoid violating his sentencing order and potentially returning to prison. Those minimum payments are merely a "floor" which Stacy must maintain. *See id.* (identifying no contradiction in a sentence that required defendant to pay full

restitution immediately but also ordered monthly payments of at least $150 because failure to pay monthly minimum would violate a condition of supervised release and "[a] floor under payments differs from a schedule").

Regulations pertaining to § 3716 offset and debts owed to the Department of Justice accord with this conclusion. *See* 31 C.F.R. § 285.5(b) ("Delinquent or past-due refers to the status of a debt and means a debt has not been paid by the date specified in the agency's initial written demand for payment, or applicable agreement or instrument … ."); 28 C.F.R. § 11.11(b) ("Judgment debts remain past due until paid in full."). Accordingly, Stacy's restitution debt is delinquent.

Fourth, Stacy argues that the restitution order "definitely does not indicate that any settlements and judgments are to be paid toward the restitution immediately." Per Stacy, "[i]f this were the case, the language would indicate so." Building on this idea, Stacy contends that if the restitution debt is due "immediately" it "would also mean that any sums of money Plaintiff encounters (such as inheritance, gifted money, winnings, etc.) should be paid straight toward his owed restitution."

We need not opine on which of Stacy's conceivable assets the government may collect through offset to satisfy his restitution debt. The asset at issue here is a judgment against the United States, and 31 U.S.C. § 3728 authorizes the government to use offset for that type of settlement award. § 3728(a) ("The Secretary of the Treasury shall withhold paying that part of a *judgment against the United States Government* presented to the Secretary that is equal to a debt the plaintiff owes the Government.") (emphasis added). Further, a restitution order need not identify which of defendant's assets restitution

is to be paid from, as statutory law provides those rules. For example, 18 U.S.C. § 3613(c) provides that "an order of restitution … is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." That authorizes the government to capture a variety of Stacy's property, the details of which are not important here. *See, e.g., United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016) (holding that the government was empowered to garnish defendant's pension despite language in the restitution order that he was to pay "not less than 10% of [his] gross monthly income" towards restitution). Stacy demands unnecessary detail from the restitution order.

One related question: At oral argument, counsel for Stacy suggested that Stacy's plea agreement constitutes a written agreement to repay the restitution debt which, for counsel, "obviate[d] the ability of the government to invoke … the administrative offset." Oral Arg. at 4:20–6:00. This argument apparently grows out of certain procedural requirements for § 3716 offset. *See, e.g.*, 31 U.S.C. § 3716(a)(4) ("The head of the agency may collect by administrative offset only after giving the debtor … an opportunity to make a written agreement … to repay the amount of the claim."). For Stacy, his plea agreement is a written agreement already in place describing how the restitution debt is to be paid. The existence of that agreement, he says, bars the government from using offset. Oral Arg. at 4:44–5:15. To the extent raised at all in Stacy's briefing, this argument first appears in his reply brief, so it is waived. *See Stechauner v. Smith*, 852 F.3d 708, 721 (7th Cir. 2017) (citation omitted).

Even on its merits, this reasoning fails. The restitution order—not the plea agreement—defines how Stacy is to pay restitution. The district court entered that order after the plea agreement, where it mandated that restitution be paid immediately. Stacy's restitution obligation was not incurred until that order. The plea agreement was executed to resolve Stacy's federal criminal charges, so it cannot be fairly recharacterized as an agreement to repay a debt. Further, § 3728—which likely controls here—contains no "written agreement" procedural component. We therefore see no legal basis for using the plea agreement as a means around offset.

A final issue remains. According to Stacy, even if he cannot access the settlement award, a portion of the settlement funds should be set aside to pay his attorneys. To him, allowing full offset here—with no carve out for his attorneys—would "ignore[] the principles of *quantum meruit*." This is because his attorneys' efforts created benefits for him and "the victim creditors," and he believes that his attorneys should be paid accordingly. But no legal basis exists here for a quantum meruit award. Recovery under that theory requires Stacy to show, at a minimum, that the United States requested his attorneys' services. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477–78 (7th Cir. 2009). Obviously, that did not occur. The United States did not ask Stacy's attorneys to sue the United States.

Beyond quantum meruit, Stacy argues "there is no statutory provision indicating that attorney's fees are subject to an offset." This point is unpersuasive because in a case like this, applicable federal statutes specifically subordinate attorney's fees to restitution debt. The interaction of 18 U.S.C. § 3613(c) and 26 U.S.C. § 6323(b)(8) shows this. As mentioned, § 3613(c)

states that a restitution order creates a "lien in favor of the United States on all property and rights to property for the person fined" coextensive with that of a tax liability. In turn, § 6323 identifies certain types of liens that may take priority against federal tax liens. Subsection (b)(8) gives an attorney's lien a sort of "superpriority" over federal tax liens, *see United States v. Ripa*, 323 F.3d 73, 80–81, 83 (2d Cir. 2003), but with a critical exception applicable here. The superpriority § 6323(b)(8) grants to attorney's liens does "not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States." Stacy's settlement arose from a claim against the United States itself, which seeks to offset that settlement against his restitution debt. So, we are not free to grant Stacy's attorney's lien priority over the government's offset here.

The same goes for offset under both § 3728 and § 3716. Section 3728 allows the United States to offset an entire judgment without mention of attorney's fees. Offset under § 3716 is similarly broad. In fact, the Supreme Court has held that even statutorily authorized attorney's fees are subject to complete offset under § 3716. *See Astrue v. Ratliff*, 560 U.S. 586, 593 (2010) (concluding that statutorily awarded fees are the property of the litigant—not counsel—which "subjects them to a federal administrative offset if the litigant has outstanding federal debts"). We thus see no basis for sheltering a portion of Stacy's settlement from offset to pay his counsel first.[4]

_____

[4] Stacy also criticizes offset here as bad policy possibly violating the Eighth Amendment. But this is a nonstarter given that Stacy never alleged the prison violated his constitutional rights. Stacy asserts, "Without just

## IV. Conclusion

The government is entitled to offset Stacy's settlement award—including any amount that might have been used to compensate counsel—against his outstanding restitution debt. Stacy's restitution is owed to the United States, and it has been past due since the time of sentencing. The judgment of the district court is AFFIRMED.

---

compensation for provided services, no attorneys [will] be willing to accept Federal Tort Claims Act cases for an abused inmate who still owes restitution." We understand this concern, but "[o]nly Congress may change the law in response to policy arguments, courts may not do so." *Env't Def. Fund, Inc. v. City of Chi.*, 985 F.2d 303, 304 (7th Cir. 1993).